# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELZO COCKREN, SR., | ) 1:09cv0169 DLB |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Elzo Cockren, Sr., ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his application on January 18, 2006, alleging disability since January 14, 2003, due to illiteracy, high blood pressure and back pain. AR 18, 154-156. After Plaintiff's application was denied initially and on reconsideration, he requested a hearing before an

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Administrative Law Judge ("ALJ").  AR 99-103, 108-112, 11.  On January 24, 2008, ALJ Michael J. Haubner held a hearing.  AR 32-76.  He denied benefits on April 25, 2008.  AR 15-27.  The Appeals Council denied review on September 22, 2008.  AR 8-12.

Hearing Testimony

ALJ Haubner held a hearing in Fresno, California, on January 24, 2008.  Plaintiff appeared with his attorney, Geoffrey Hayden.  Vocational expert ("VE") Jose Chaparro also appeared and testified.  AR 32.

Plaintiff testified that he was born in 1959 and completed the twelfth grade in special education/vocational classes.  He last worked in 2003, though only for six months.  AR 38-39, 73.  In 2000, he worked stacking potatoes for two months.  AR 39-40.  Plaintiff last used drugs about three years ago and last drank alcohol about 20 years ago.  AR 40-42.  He testified that he has been convicted of possession of a controlled substance and "failure to register."  AR 42-43.

Plaintiff rents a room at a hotel and does not make the bed, though he changes his sheets every week.  AR 43.  He does laundry once a week at the laundromat.  He is able to take care of his personal needs and prepare simple meals twice a day.  AR 44.  He washes dishes every other day and vacuums his room once a week.  AR 45.  Plaintiff goes shopping once a month.  AR 46.  He goes to church every Sunday.  AR 47.

Plaintiff estimated that in an average day, he watches television for about 12 hours.  He has no other hobbies and doesn't like to talk to people.  AR 48.  When he sees people at church or shopping, he often argues with them.  Plaintiff tries to avoid people.  AR 52-53.  He talks on the phone about once a day and a friend visits him about once a week.  AR 49.  Plaintiff testified that he does not know how to read and write.  AR 50.

Plaintiff thought that he could walk for about a block and could stand for five minutes.  He thought that he could sit for about five minutes.  AR 51.  Plaintiff estimated that he could lift five pounds without hurting himself.  He explained that he has to lay down for about seven hours during the day.  AR 52. Plaintiff thought that he could concentrate for about 10 minutes.  AR 53.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience.  This person could stand and/or walk eight hours out of an eight hour

day and sit for eight hours. This person could lift and carry 100 pounds occasionally and 50 pounds frequently. This person could occasionally bend and stoop and had to avoid food handling or preparation. The VE testified that this person could not perform Plaintiff's past work but could perform the positions of bellhop, farm machine tender and house cleaner. AR 59.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift and carry 50 pounds occasionally, 25 pounds frequently, and could occasionally bend, crouch and crawl. This person would be precluded from performing forceful pushing or pulling with the left arm. The VE testified that this person could perform Plaintiff's past relevant work as well as the positions of battery stacker, cook helper and dining room attendant. AR 60-61, 68.

For the third hypothetical, the ALJ asked the VE to assume that this person could lift and carry 50 pounds occasionally, 25 pounds frequently, and could occasionally climb, balance, stoop, kneel, crouch and crawl. This person could not perform Plaintiff's past work but could perform the positions of bellhop, farm machine tender and house cleaner. AR 61.

For the fourth hypothetical, the ALJ asked the VE to assume that this person could lift and carry 50 pounds occasionally, 25 pounds frequently. This person could perform Plaintiff's past work and could perform the world of unskilled medium, light and sedentary work. AR 61-62.

For the fifth hypothetical, the ALJ asked the VE to assume a person who could not perform simple repetitive tasks consistently or follow simple instructions as would be expected in a job-like setting. This person could not perform any work. AR 62.

For the sixth hypothetical, the ALJ asked the VE to assume that this person would be moderately limited in his ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform within a schedule, maintain regular attendance, sustain an ordinary routine without sufficient supervision, work in coordination or proximity to others, or complete a normal workday or workweek. This person could not perform any work. AR 63.

For the seventh hypothetical, the ALJ asked the VE to assume that this person has a limited intellectual capacity that may present moderate difficulties in a work setting involving

complex decision making or detailed tasks. AR 63. The VE testified that this person could perform Plaintiff's past work, as well as unskilled work at all exertional levels. AR 63-64.

For the eighth hypothetical, the ALJ asked the VE to assume that this person is moderately limited in his ability to understand, remember and carry out detailed instructions, interact with the public, accept instructions and respond appropriately to criticism. This person could not do any work. AR 65.

For the ninth hypothetical, the ALJ asked the VE to assume that this person has a fair ability to remember locations and work-like procedures, a fair ability to understand and remember simple and detailed instructions, a fair ability to maintain attention and concentration, a fair ability to accept instructions, perform activities within a schedule, and maintain an ordinary work routine, a fair ability to complete a normal workday, a fair ability to perform at a consistent pace, a fair ability to interact appropriately with coworkers and a fair ability to deal with various changes. The VE testified that the definition of "fair" was too uncertain to allow him to answer the hypothetical. AR 65-66.

For the tenth hypothetical, the ALJ asked the VE to assume that this person could stand and/or walk eight hours out of an eight hour day and sit for eight hours. This person could lift and carry 100 pounds occasionally and 50 pounds frequently, and could occasionally bend and stoop. This person had to avoid food handling or preparation and could not perform complex tasks. AR 66. This person could not perform Plaintiff's past work, but could perform the positions of bellhop, farm machine tender and house cleaner. AR 67.

For the final hypothetical, the ALJ asked the VE to assume the limitations as Plaintiff described them during his testimony. The VE indicated that this person could not perform any work. AR 67.

Medical Record[2]

On June 4, 2002, Plaintiff underwent mental health screening upon entering the California Department of Corrections. The screening was negative for significant symptoms of a serious mental disorder and Plaintiff was cleared for the general population. AR 301.

On May 12, 2003, Plaintiff was seen for a psychological evaluation in the Bakersfield Parole Outpatient Clinic. Plaintiff reported no psychiatric history and refused to discuss his prior drug and alcohol use. He explained that he ended school in special education as a "basic non-reader." Plaintiff reported that he liked to work, though it was difficult to find work because of his inability to read. Plaintiff was living in a motel and doing odd jobs to pay his rent. He looked for work every day, but cannot fill out the applications. On mental status examination, Plaintiff's mood and affect were mellow, with no evidence of a major affective disorder or psychotic processes. Psychologist Carol Hendrix diagnosed methamphetamine and alcohol abuse, in remission, antisocial behavior disorder, borderline intellectual functioning, basic non-reader. Plaintiff was strongly opposed to intervention, though Dr. Hendrix recommended that he be seen individually to work on his life coping skills. AR 352-354.

On August 9, 2003, Plaintiff underwent a comprehensive psychiatric evaluation performed by Sonya M. Kelly, Ph.D. Plaintiff reported that he could not work because he could not read or write. He also stated that he was in special education classes in high school. Plaintiff admitted to mild nervousness and one previous suicide attempt by aggravating the police. He reported previous arrests on charges of assault and battery of a peace officer, spousal abuse, driving on a suspended license, grand theft auto, and violations of parole/probation, including methamphetamine use and consorting with known criminals. Plaintiff reported being clean for one year. AR 308-310.

Plaintiff was currently living in his truck and buying food with food stamps. He relied on the pictures on the product to determine what food to buy. Plaintiff was fired from a prior job at a truck stop when it was discovered that he could not read or write. Plaintiff reported lifelong

---

[2] Plaintiff's sole argument is related to his mental health treatment and the summary of the record is therefore limited accordingly.

illiteracy, though he was not forthcoming in all of the information presented. Dr. Kelly recommended that records be obtained from his high school to confirm or rule out the accusation of being illiterate. AR 308-310.

On mental status examination, Plaintiff was resistant to answering questions about what he does to keep himself busy during the day, his criminal background and why his marriage ended. His stream of mental activity and speech were within normal limits. His mood and affect were restricted yet pleasant. Plaintiff was oriented to person, place and situation, but had difficulty with time. Plaintiff's immediate, recent and remote memory were impaired and his fund of knowledge was deficient. Plaintiff could not perform serial 3s and confused a three steep command. Insight and judgment were poor to fair. AR 310-312.

Dr. Kelly diagnosed major depressive disorder, recurrent, mild, cocaine dependence in full sustained remission, hallucinogens dependence in full sustained remission, adult antisocial behavior and borderline intellectual functioning, by history only. His symptoms of depression in a non-controlled setting may be the result of his inability to read, write and find employment. Dr. Kelly recommended that additional records by obtained, though she noted that his performance on the mental status examination was consistent with someone who has problems with literacy and a limited education. AR 312. Dr. Kelly opined that Plaintiff was not likely to be able to perform simple and repetitive tasks consistently or follow simple instructions as evidenced by his poor performance on much of his mental status examination. AR 312-313.

On October 1, 2003, Plaintiff underwent a psychological evaluation performed by John K. Zhang, Psy.D. Plaintiff reported that he attended the twelfth grade, but did not graduate, and could not read or write. Plaintiff admitted to a long criminal history, including convictions for lewd and lascivious acts upon a child, not registering as a sex offender, and brandishing a weapon to a police officer. When asked about specifics, he stated, "I guess I was around people with kids," and refused to give anymore details. Plaintiff has served several prison sentences and has been arrested at least 28 times. Plaintiff reported that he was homeless and was staying at a local mission. He gets up in the morning, waits for coffee and then walks around outside and

gets bored.  He spends the rest of his day watching television and visiting with the others residents.  AR 344-346.

On mental status examination, Plaintiff's mood and affect were unremarkable.  He was oriented in all spheres and showed no signs of a thought disorder.  Plaintiff's fund of knowledge and intellectual functioning were limited, as were insight and judgment.  Plaintiff's test scores placed him in the extremely low range of intellectual functioning, though Dr. Zhang noted that the results should be considered an underestimate of his current functioning because he performed the tasks in a "rather lackadaisical manner."  Plaintiff demonstrated serious impairments in all areas of his memory.  He exhibited profound deficits in his ability to remember information immediately after it is orally presented and in his ability to remember both visual and auditory information immediately after it is presented.  Plaintiff's performance on other tests suggested possible neuropsychological impairments.  AR 346-348.

Dr. Zhang diagnosed amphetamine dependence, reportedly in remission, alcohol abuse, cognitive disorder, not otherwise specified, and antisocial personality disorder.  He noted that the examination revealed minimal mental impairments that would interfere with Plaintiff's ability to handle common manual-labor types of employment.  His limited intellectual capacity may present moderate difficulties for him in work settings that require complex decision making or detailed instructions.  Dr. Zhang believed that Plaintiff may need assistance managing funds.  AR 348.

On November 25, 2003, State Agency physician Luyen T. Luu, M.D., completed a Mental Residual Functional Capacity Assessment form.  Dr. Luu opined that Plaintiff had moderate limitations in his ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision and work in coordination with or in proximity to others without being distracted by them. He also had moderate limitations in his ability to complete a normal workday or workweek, interact appropriately with the general public, accept instructions and respond appropriately to criticism, get along with coworkers or peers without distracting them, maintain

7

socially appropriate behavior, and respond appropriately to changes in the work setting. AR 314-315.

Although Plaintiff retained the ability to understand, remember and carry out simple, short instructions, Dr. Luu opined that he had an insufficient ability to understand, remember and carry out complex instructions, perform activities with directions without additional support, maintain attention in two hour increments, maintain socially appropriate behavior, interact appropriately with coworkers and respond appropriately to changes in the work setting. AR 316.

In rating his functional limitations, Dr. Luu opined that Plaintiff had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. AR 329. Dr. Luu noted that although his IQ was low, "this is not the criteria for not working." "In the recent past years, he had been in and out of jail/prison, which explained his not belonging to the workforce." Plaintiff could care for himself and drive and appears to be able to sustain simple, repetitive tasks. AR 335.

On April 23, 2006, Plaintiff saw James McNairn, Psy.D., for a psychiatric evaluation. Plaintiff arrived on time but could not complete a preinterview psychological history questionnaire. On mental status examination, Plaintiff's mood was depressed and his affect was restricted. He appeared to be in the below average to borderline intellectual functioning range. Recent and past memory appeared to be intact. His calculation ability was poor. Plaintiff was able to perform a simple three-step command and his concentration throughout the interview was adequate. He was unable to spell the word "world" due to his illiteracy. Dr. McNairn noted that Plaintiff did not appear to be exaggerating his symptoms. AR 360-364.

Dr. McNairn diagnosed major depressive disorder, recurrent, mild, polysubstance dependence in sustained remission, antisocial personality disorder, rule out borderline intellectual functioning. The likelihood of improvement was fair and his attitude towards seeking employment is fair. Plaintiff's abilities in all work requirements were fair and there was a minimal likelihood of Plaintiff deteriorating in a work environment. AR 364-365.

On June 21, 2006, State Agency physician B. Rudnick, M.D., completed a Mental Residual Functional Capacity Assessment form. Dr. Rudnick opined that Plaintiff had moderate limitations in his ability to understand, remember and carry out detailed instructions, complete a normal workday or workweek, interact appropriately with the general public, and accept instructions and respond appropriately to criticism. AR 378-380.

In rating his functional limitations, Dr. Rudnick opined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. He also had one or two episodes of decompensation. AR 392. Dr. Rudnick opined that Plaintiff could perform at least simple, repetitive tasks not calling for more than routine interpersonal interaction. AR 396.

In May 2007, State Agency physician Harvey Biala, M.D., opined that Plaintiff could perform simple, repetitive tasks. AR 369. In rating his functional limitations, Dr. Rudnick opined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. He also had one or two episodes of decompensation. AR 392.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had the severe impairments of hepatitis C, a history of amphetamine and alcohol abuse, a cognitive disorder, an antisocial personality disorder, rule out borderline intellectual functioning, a history of lumbar spine scoliosis and a low back injury. AR 20. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift/carry 50 pounds frequently, 100 pounds occasionally, and stand/walk/sit for a total of eight hours. Mentally, Plaintiff had minimal impairments that would interfere with his capacity to handle common manual-labor types of employment. He would have moderate difficulties in a work setting that required complex decision making or detailed instructions. AR 23-24. Plaintiff could not perform his past relevant work, but based on the testimony of the VE, the ALJ determined that Plaintiff could perform a substantial number of jobs in the national economy. AR 25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (hepatitis C, a history of amphetamine and alcohol abuse, a cognitive disorder, an antisocial personality disorder, rule out borderline intellectual functioning, a history of lumbar spine scoliosis and a low back injury) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) can perform a significant number of jobs in the national economy.  AR 20-25.

Here, Plaintiff argues that the ALJ failed to (1) properly evaluate his mental impairments, and (2) properly assess his testimony regarding his illiteracy and cognitive functioning.

**DISCUSSION**

A.  Evaluation of Plaintiff's Mental Impairments

Plaintiff disagrees with the ALJ's treatment of the various opinions regarding his mental impairment.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony *alone* to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

The mental health record contains opinions from consultive examiners and State Agency physicians. As Plaintiff did not appear to have ongoing mental health treatment, there is no opinion from a treating source. The ALJ reviewed all three opinions from the consultive examiners and ultimately adopted Dr. Zhang's finding that Plaintiff could perform "common manual-labor types of employment." AR 21, 348. The ALJ found that Dr. Zhang's conclusion was well supported by the objective evidence. AR 21.

Having accepted Dr. Zhang's conclusion, the ALJ included Dr. Zhang's findings in hypothetical seven. He asked the VE to assume a person with minimal mental impairments that

12

would interfere with his capacity to handle common labor types of employment, though this person would have moderate difficulties in a work setting involving complex decision-making or detailed tasks. AR 63. The VE questioned the terms of the hypothetical and the ALJ acknowledged that it was "a little confusing." AR 63-64. To clarify, the ALJ stated, "I interpret that to mean that they could do simple, common labor tasks." AR 64. The VE indicated that such a person could perform Plaintiff's past work and the other work previously identified. When the ALJ asked the VE to combine the first hypothetical (setting out physical limitations) with hypothetical seven, the VE testified that this person could perform the positions of bell hop, farm machine tender and housecleaner. AR 66-67. The ALJ used this testimony to determine that Plaintiff could perform other work and was therefore not disabled.

The VE's initial confusion with the ability to perform "common labor types of employment" demonstrates the flaw with Dr. Zhang's conclusion and the ALJ's subsequent assumption. As to Dr. Zhang's conclusion, his finding that Plaintiff could perform common manual-labor types of employment was not set forth using the proper terms of art. He did not specifically state that Plaintiff could perform simple, repetitive tasks and instead came to a conclusion that required vocational knowledge. In other words, it was beyond Dr. Zhang's expertise to determine that Plaintiff was capable of common manual-labor types of positions because such a finding requires specialized knowledge of exactly what such positions entail.

Moreover, the ALJ was unable to cure this by assuming that Plaintiff could perform "simple" tasks because Dr. Zhang's findings do not necessarily support such an assumption. For example, Dr. Zhang found a limited fund of information, limited intellectual functioning, limited judgment and insight, possible borderline intellectual functioning and a possible neurological impairment. Most importantly, though, his testing revealed that Plaintiff had serious impairments in all areas of his memory. Plaintiff had "profound deficits in his ability to remember information immediately after it is orally presented and [in] his ability to remember both visual and auditory information immediately after it is presented." He concluded, "[t]here are no areas of strength noted in his memory." AR 347-348. Given these findings, the ALJ

could not have reasonably concluded that Dr. Zhang would have determined that Plaintiff could perform simple tasks.

As to Dr. Kelly's opinion that Plaintiff could not perform simple, repetitive tasks consistently or follow directions, the ALJ gave it little weight because it was not supported by the longitudinal record. "There is no longitudinal confirmation of consistently severe mental limitations that would preclude the performance of simple, repetitive tasks for a continuous period of 12 months." AR 21. The ALJ was correct to note that Plaintiff had no continuous mental health treatment.

Moreover, although Plaintiff cites Dr. Kelly's finding to support his allegation of illiteracy, Dr. Kelly's determination was not conclusive. Her diagnosis of borderline intellectual functioning was by history only and she noted that his high school records should be obtained and/or additional psychological testing should be performed to confirm, or rule out, his borderline intellectual functioning and illiteracy. Although Dr. Kelly noted that his performance on the mental status examination was consistent with someone who has "problems with literacy and limited education," a mental status examination alone is not sufficient to confirm or rule out illiteracy. AR 312. Dr. Kelly also noted that Plaintiff was not "completely forthcoming" with all information presented. AR 310. The ALJ's error in adopting Dr. Zhang's opinion therefore does not mean that Dr. Kelly's opinion was automatically controlling.

Finally, the ALJ explained that Dr. McNairn's opinion was "not inconsistent" with Plaintiff's mental RFC. AR 22. Dr. McNairn noted that Plaintiff was able to perform a simple three-step command and his concentration throughout the interview was adequate. He described Plaintiff's abilities in all work areas, including his ability to understand and remember short and simple instructions, as fair. AR 364-365. Yet when posed with limitations defined as "fair," the VE testified that the definition of "fair" was too uncertain to allow him to provide an answer. AR 65-66. Therefore, given the ALJ's improper reliance on Dr. Zhang's opinion and the VE's inability to define "fair" in any helpful manner, the ALJ's conclusion as to Dr. McNairn's is unsupported.

The Court therefore finds that the ALJ's adoption of Dr. Zhang's opinion was not supported by substantial evidence. Remand will be discussed at the conclusion of this order.

B.      Plaintiff's Credibility

Plaintiff next contends that the ALJ failed to properly assess his testimony relating to his illiteracy and cognitive functioning.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id*. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

Here, the ALJ first noted that although Plaintiff testified that he could only sit for five minutes and concentrate for 10 minutes, he was able to sit for 45 minutes during the hearing and pay adequate attention and respond appropriately for the duration of the hearing. AR 24. This is a valid consideration. *See Drouin v. Sullivan,* 966 F.2d 1255, 1258-59 (9th Cir. 1992) (ALJ's observations during the hearing, along with other evidence, constitutes substantial evidence).

Next, the ALJ explained that although Plaintiff testified that he needed to lay down for seven hours during the day due to pain, the objective evidence does not support such a severe impairment. The ALJ also notes that no treating source has precluded Plaintiff from the

15

performance of all work activity. AR 24. Although this relates to Plaintiff's allegations of physical limitations, the lack of objective evidence also speaks to Plaintiff's overall credibility. Plaintiff suggests that his claims of illiteracy are supported by the information he provided to various physicians during treatment. These statements, however, are subject to the same analysis. In other words, Plaintiff's statements are not valid simply because he made the same statements to his physicians.

The ALJ further explains that although Plaintiff testified that his only convictions were for drug possession and a parole violation, the record shows convictions for child sexual abuse, spousal abuse, driving on a suspended license, being drunk in public, assault and battery on a peace officer and grand theft auto. "His lack of forthright disclosure regarding these multiple convictions, as well as a history of criminal conviction for a crime of moral turpitude (grand theft) detracts from the claimant's credibility." AR 25. Plaintiff concedes that this factor is a "fair reason" for questioning his credibility. Opening Brief, at 16.

Finally, the ALJ contrasted Plaintiff's activities with the alleged severity of his impairments. The ALJ explained that Plaintiff could take care of his personal needs, do simple meal preparation, wash dishes every other day, vacuum once a week, dust furniture every three months and grocery shop. AR 25. The ALJ correctly noted that such activities are inconsistent with Plaintiff's testimony as to how severely his impairments affect his daily activities. Even if such activities are not sufficient to discredit his testimony, the credibility analysis remains valid. *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

The ALJ's credibility analysis is supported by substantial evidence and is free of legal error.

C. Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or

simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."). The Court will discuss the remedy at the end of this opinion.

Here, the ALJ's adoption of Dr. Zhang's opinion was not supported by substantial evidence. The analysis of the medical evidence, however, can be cured by additional proceedings. On remand, the ALJ shall either obtain a clarification from Dr. Zhang as to Plaintiff's abilities to perform simple, repetitive tasks or obtain an additional examination. Any finding must be consistent with the objective evidence.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Elzo Cockren, Sr., and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **July 13, 2010**         /s/ **Dennis L. Beck**
                                   UNITED STATES MAGISTRATE JUDGE